Hull, J.
This action is brought by Hunt, receiver of the Clover Teaf railroad, so-called, to reverse a judgment of the court of common pleas. Prank H. Caldwell, the plaintiff below, defendant in error here, was a brakeman in the employ of the Clover Teaf road on and prior to October 14, 1896. On that day he was injured by falling from the top of a car, where he was engaged in the performance of his duties. Por the injuries then sustained he brought suit, claiming negligence on the part of the company in the construction of a brake. The case was tried once in the common pleas and a verdict returned in favor of the plaintiff for something over $3,000 A motion for a new trial was then allowed. The case was tried again and a verdict returned in favor of the plaintiff for $4,000. After the latter trial a motion for a new trial was overruled and judgment entered against the railroad company; to which judgment, error is prosecuted in this court.
*284 The negligence complained of is, that certain parts of the brake were improperly constructed and in a defective condition at the time of the accident and that this caused the injury that the plaintiff below suffered. The things particularly complained of were, that the .brake-chain was somewhat too long and that the eye-bolt which holds the chain and to which the chain is fastened was too large and too long and that, on thac account, the brake was defective and that the chain wrapped around the eye-bolt and slipped off while the brake.was being opened by Caldwell, and that he was in that way jerked and thrown off the car.
The accident happened at the city of Marion, Indiana, about ■•daylight on the morning of October 14, 1896. Caldwell was the headbrakeinan on the train, and as they were passing through the city of Marion, it was noticed that he did not open •a gate, which it was his duty to open, and, on investigation being made, it was found that he had disappeared from the train. Search was made and he could not be found, after which the train proceeded eastward without him, and he was afterwards found lying near the track in a street of Marion, in an unconscious condition, he having been injured about the head by his fall from the train. The conductor of the train went over the train after they left Marion, and a witness by. the name of Danner, who was also a brakeman on the train, testified that at the town of Vanburen, about ten miles from Marion, he looked over the train. The lantern of Caldwell was found on the fifth car from the locomotive and it was supposed that he fell from that car.
There were no reasons discovered at the time of the accident, that is, no reasons made known, accounting for the accident. for his falling off the train. Mr. Danner, the witness to whom I have referred, was at that time in the employ of the ■ company, but some three days after that he was discharged from the service of the railroad company. He testified that he looked over the car on the morning of the accident and he claims thac he found heel-marks or scratches on the top of the fifth car indicating that Caldwell had slipped on that car. He also claims that he discovered at that time that the eye-bolt was too long and the chain somewhat too long. He said nothing to *285 the. conductor or to the engineer, or to any other person, about these things, if he discovered them as he claims to have done. He, himself, claims only that he did say, that he could tell, or knew, what was the cause of Caldwell falling off the train. This is denied by the engineer, and the conductor, to whom he claims he stated it, and he does not claim that he stated to any person upon this train what he says he discovered at that time, nor, so far as the record discloses, did he say anything at all about it to any one until about the time this action was •commenced, which was some fifteen months after Caldwell’s injury.
Caldwell’s injuries, as it appears from the record, of course were not fatal, and he afterwards recovered so as to be about, but he claims to have sustained serious injuries.
Danner’s deposition was taken, ad he testifies that at Vanburen, Indiana, shortly after Caldwell disappeared — after it was found that he had fallen from the tráin — he went back ■over the train, and that the fifth car from the engine was a double-decked stock car, that being the car upon which it was said that Caldwell’s lantern was found, and he says that he examined the brake and turned it and the chain appeared to be somewhat longer than they usually were, and he says further that the eye-bolt was larger and longer that they usually were; he testifies that it was larger than was necessary and longer than necessary. Upon that being ruled out and he being pressed, upon cross-examination, he stated that he did not measure the length of the eye-bolt, but should think it was four and a half inches long, and he says that he tried the b¡ake and when he turned it the chain would wrap around the eye-bolt and after he had given it a few turns the chain would be thrown off from the eye-bolt and that would jerk him off the brake, and the claim of the plaintiff below was that it was in this way he was jerked off the train.
The chief ground of complaint here is, that the verdict is not sustained' by sufficient evidence, is contrary to law, and, further, that there is no evidence in the record to show negligence on the part of the railroad company, or to show if there was any defect in this brake, that Caldwell’s injury was ■ caused by such defect.
*286 Caldwell himself does not testify to any defect in the brake-of this car. No witness testifies upon the subject except Mr. Danner. Caldwell testifies that he was turning the brake on the car from which he fell, which appears to have been the fifth one from the engine, and he says: “The last I remember doing on the car is that I gave the brake a turn or two of the wheel to take the slack out of the chain,'then I applied my strength to the wheel to turn it tight as much as I could, and when it became tight, as it required all the strength I had, something gave way and gave me a terrible jerk and I fell off the side of the car. That is the last I remember anything about it.”
So that, as appears, he had no knowledge of the cause of this jerk which he says threw him off the car. Danner testifies that the dog was in the ratchet and the brake set on this car when he went back there.
Danner was asked whether he examined the eye-bolt, and he says “I did after I found out how the brake acted.”
“Q. How long was the eye-bolt?” “A. I didn’t measure.”
“Q. Well, about?” “A. Well, sir, I should judge that-the entire bolt was about — oh, four inches and half.”
“Q. How long are eye-bolts usually on other cars?” “A. Well, it is not necessary for them to be over three inches.”
We think the record shows that this eye-bolt must have been at least three inches and a half long to perform the service for which it was intended.
Then he was asked this: “I am not asking what is necessary, I z.m asking you how long they usually are?” “A. I never measured them.”
“Q. Then you never measured any other eye-bolts?” “A. No, sir.”
“Q And you don’t know from actual examination how long the usual eye-bolts on cars are, do you?”“ “A. Well, I know from experience they are not all the same length.”
“Q. That is, some are longer and some shorter?” “A. Yes, sir, for I have put them in quite a number of times and I know some are not quite long enough to go through the stem and catch the nut and others are a little bit longer than neces • sary, and some the eye is larger than on others.”
In regard to the brake chain, he is asked: “You say the brake-chain was loose?” “A. Yes, sir,” * * *
*287 “Q. Brake-chains on cars are frequently a little loose, aren’t they?” “A. Yes, in some they are looser than or. others.”
“Q. Isn’t it a fact that there is not a car on the road on which the brake-chain pulls on the brake as soon as you start turning the wheel?” “A. No sir.”
“Q. Isn’t it a fact that there is some slack, a certain amount of slack now, in every brake in every car?” “A. Yes, sir, there is some.” * * *
“Q. Then you don’t know how they hung on this car?” “A No, sir, T don’t know how they hung on this car.”
“Q. This was not a Clover Leaf car?” “A. No, sir.”
And he was asked this question: “Now, haven’t you as a fact, Mr. Danner, often seen cars on which the chain was so loose that it would wrap upon itself for one wind and then fall over?” And he says he has seen that frequently. “A. Yes, sir, I have seen it wrap two winds and fall over.”
“Q. How often have you seen that?” “A. Oh, a number of times.”
Danner testifies that this car was a Nickel Plate car — the one he examined — that it was the fifth car from the locomotive. The records of the railroad company which they keep, setting- down when cars were put into a train and their order in the train show that the Nickel Plate car at the time of the accident was the second car from the locomotive, it having been put into the train after leaving Frankfort, and the weight of all testimony is that the Nickel Plate car at the time of the accident, was the second car from the locomotive. No witness testified that it was the fifth car except Danner; but he might be mistaken as to the order in which this car was in the train, it is argued, although his testimony was based entirely upon the fact that this car which he examined was a Nickel Plate car; he was questioned very fully and swears positively that it Was the fifth car from the locomotive.
The claim of negligence against the railroad company, and of the cause of Caldwell’s injury so far as any evidence of the transaction itself is concerned, rests entirely upon the testimony of Danner and the plaintiff, and without Danner’s testi *288 mony it is clear there is no negligence shown against the railroad company, causing or contributing to the injury to Caldwell.
A large number of witnesses were called on this question of brakes and the way they are, and should be made, and it appears from their testimony that- these eye-bolts were of various lengths upon cars, that they were often as long as four inches, or four and a half, and in some instances longer. The eye-bolt is simply a bolt going through the shaft of the brake, with a nut on one end to hold it, and at the other end an eye to which the chain was attached; the chain, in this case, being a half-inch chain, and this eye-bolt held the chain so that it'could be wrapped around the shaft of the brake to stop the cai. It was necessary, of course, that these eye-bolts should be strong, substantial;, the whole apparatus of the brake, the shaft, the chain, the eye-bolt and key-bolt below the eye-bolt, all must be strong, substantial and of good size, and if they were not, that in itself would be negligence on the part of the railroad company, in not supplying machinery and apparatus of sufficient strength. This Nickel Plate car was not a car manufactured by the Clover Leaf road, nor a car owned by them, but a car which had come on to the road from another railroad, nineteen days prior to the accident. At that time it was inspected and it was inspected from time to time when necessary thereafter; there is no evidence that it was not carefully and properly inspected, and no evidence that the inspectors were not proper and careful men.
The jury having returned a verdict for the plaintiff in this ease, and they being the judges of the facts, the verdict can not and should not be disturbed in this court unless it is clearly and manifestly against the weight of the evidence, or unless .there is no evidence tending to show negligence on the part of the railroad company.
After careful examination of this record, we are of opinion that it does not show negligence on the part of the railroad company — that there is no evidence in the record tending to show want of ordinary care on the part of the railroad company with reference to this car or this brake. It was made in the proper way, that is, it had the shaft chain, eye-bolt, key-bolt, dog and all the other things that were necessary and *289 proper for a brake. No complaint is made as to the plan or method of construction.' It was made of good material and strong enough, and all that. Now that being a heavy, substantial piece of machinery, as this was, if this eye-bolt was a fraction of an inch longer than the eye-bolts in perhaps a majority of brakes were, or some other brakes were, we do not think that would constitute want of ordinary care on the part of the railroad company in taking this car upon its tracks and permitting its men to use and operate the car.
Holding, as we do, that there is no evidence here to show-negligence against the railroad company, we, of course, hold that the verdict is against the weight of the evidence, as we think it clearly is.
The testimony of Mr. Danner does not commend itself very favorably to the court, he having, as he claims, noticed this defect on the right of this accident, when all were looking for the cause of the man’s injury, when a fellow trainman had falle off and sustained s serious injury; he claims that he at that time discovered this defect, that he experimented with the. brake and learned the cause of the man’s injury, and yet said nothing to any one about it, keeping it a entire secret, although as he claims, at the time he discovered this, he carefully set down in a book the number and description of the car and the defect which he discovered. It does not seem to us that the conduct of Danner was that of an honest and a truthful man. He says it was not his duty to make a report, but it was his duty at the time when investigation was made to disclose to the conductor anything that he might have learned which would throw light upon this subject. But he said nothing. . His conduct on that occasion and afterwards, impeaches his testimony as a witness. When his deposition was finally about to be taken, the record shows that he sought an interview with the officers of the railroad company in a manner somewhat peculiar just before he gave his testimony, and wanted to know whether they wished to see him before he testified.
So far as the Nickel Plate car being the fifth from the engine is concerned, all of the other testimony is against that of Mr. Danner. The records of the company which were put down by the men as the car passed through their hands, when *290 there was no interest to make a false record, all show that this Nickel Plate car was the second one from the engine, and not the fifth.
Now, we are of the opinion, that if this eye-bolt was a little larger than many other eye-bolts, a fraction of an inch, or; perhaps a half an inch, which would be a quarter of an inch on each side of the shaft, that, considering the nature of the apparatus and the machinery and the work it was to do and its character, and all that, we think that it would not constitute negligence on the part of the railroad company to take such a car as that upon its tracks and permit its men to use It. If the eye-bolt was too small, it would have been too week, and that would be a defect.
And, furthermore, it does not appear from this record that Mr. Caldwell’s injuries were due to any defect in this eye-bolt. According to the undisputed testimony, a brake-chain is liable at airy time to wind upon itself, as they call it, and pull up on itself and then slip off and thus cause such a jerk as occurred in this case. And the dog is liable to slip out of the ratchet and cause such a jerk; but if this was in place When Danner examined the car, as he claims it was, that was-not the cause here. The chain is, of course, liable to wrap around any eye-bolt whether it is four inches or four and a half inches long; it is a thing that is common to all brakes of this kind, but there must be some way of fastening the chain, which is a necessary part of a brake. There is no claim made here that the eye-bolt was not necessary or that the plan of construction of this brake was not a proper one, and the fact that the bolt may have been a fraction of an inch longer than some others, would not, in my judgment, constitute negligence on the part of the railroad company.
Even if this were true, if this were longer than it ought tq have been, even if that constituted a defect, still before Caldwell would be entitled to recover against the Clover Leaf railroad company it would be necessary for him to prove by evidence that the injury was caused by this defect. All that Caldwell knov/s about it is, that when he was setting this-brake there was this sudden jerk and he was thrown off. But this chain may have wound or piled upon itself and been thrown off and Caldwell jerked and thrown the same as he *291 would have been if the chain was wrapped around the eye-bolt; no one can tell from the evidence which it was that caused this brake to jerk; and the supreme court has recently .said of negligence, this must be proved, it cannot be guessed at.
Brown & Geddes, for Plaintiff in Error.
'Hurd, Bru¡ñback & Thatcher, for Defendant in Error.
As was said by the court in its charge to the jury in this case, if it might just as probable have been caused in some other way than that claimed, then the jury would not be warranted in finding that this was the cause of the injury. And in our judgment it is not shown that any defect caused the injury. So that, laying aside those things which it seems to us impeach the testimony of Mr. Danner, and render him a witness unworthy of belief, and giving his testimony full con • sideration, we are of the opinion that there is no evidence in this record showing negligence or want of ordinary care on the part of the railroad company; and, more than that, if there was any defect, the evidence does not show that Mr. Caldwell’s injury was caused thereby.
For these reasons the court of common pleas erred in overruling the motion to direct a verdict for the defendant, at the close of plaintiff’s testimony, and this motion should have been allowed when it was again renewed at the close of the case.
The judgment of the court of common pleas will therefore be reversed and the cause remanded for a new trial.